# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**AARON ABADI**

82 Nassau Street Apt 140

New York, NY 10038,

        Plaintiff

V.

**NATIONAL RAILROAD**

**PASSENGER CORPORATION**

**DBA AMTRAK**

1 Massachusetts Ave.

NW Washington, DC 20001,

           Defendant.

Case: 1:22-cv-03684 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 12/5/2022
Description: Pro Se Gen. Civ. (F-DECK)

## ORIGINAL COMPLAINT

& JURY DEMAND

December 2, 2022

Plaintiff, Aaron Abadi, brings this action pro se, against the defendant, Amtrak, alleging that defendant discriminated against him due to his disability, conspired to deny him his civil rights, and neglected to prevent interference with his civil rights, when they had that opportunity. The defendant that the Plaintiff listed so far, is only the company itself. Other defendants may be added, after obtaining permission from the court, upon receipt of discovery, including the

person that responded to the email discriminating against Plaintiff, and the conductor that discriminated.

Plaintiff requests injunctive relief, declaratory relief, compensatory damages, punitive damages, and any other relief that the court shall determine, and/or any relief that will become apparent and appropriate upon the exchange of discovery.

## PARTIES

1)    Plaintiff, Aaron Abadi, resides in the City of New York. His address is 82 Nassau Street, Apt. 140, New York, NY 10038.

2)    Defendant, NATIONAL RAILROAD PASSENGER CORPORATION DBA AMTRAK ("Amtrak"). is headquartered in the District of Columbia.  Its registered address is at 1 Massachusetts Ave., NW Washington, DC 20001.

## JURISDICTION & VENUE

1)    This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States. Amongst other claims, Plaintiff is alleging violations of the federal ADA laws 42 U.S. Code § 12182, The Rehabilitation Act ("RA") of 1973 § 504, 29 U.S.C. § 794 (a), 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights, and 42 USC § 1986, Neglecting to Prevent Interference with Civil Rights.

2)    This Court has jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, and there is diversity of citizenship, as Plaintiff is a resident of the State of New York, and Amtrak is based in Dallas, Texas.

3)    This court has jurisdiction under 28 U.S. Code § 1369 C 2, as Amtrak does substantial business in Washington, DC, and has its main headquarters there. The statute reads as

follows, "a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of any State in which it is incorporated or licensed to do business or is doing business."

4)    Venue is proper pursuant to 28 U.S.C. 1391(b) because the events giving rise to the allegations in this complaint occurred in this district, as in many others. The notification and discrimination were done by email to Plaintiff in New York City, presumably sent from Amtrak in Washington, DC.

5)    Plaintiff has standing to sue Defendant, as his injuries were a direct result of actions taken by Defendant.

## FACTUAL ALLEGATIONS

6)    Defendant owns and operates the largest train company in the U.S., that provides train service for travelers throughout the United States and beyond.

7)    The Covid-19 virus that arrived from Wuhan, China, spread throughout the world, causing significant death and hospitalizations, during the end of 2019, though 2020, and continuing in 2021 and 2022.

8)    The Center for Disease Control ("CDC") announced guidance for requiring all people to wear masks in public places and on transportation services. The guidance varied as the time progressed.

9)    Throughout this pandemic, most, if not all mask mandates, mask guidance, and related laws, included wording to remind people that children under 2 years old and people with a disability that causes that the person cannot wear a mask, are exempt. The ADA put out a guide elaborating on the types of disabilities that would not be able to wear masks. It's named, "The

ADA and Face Mask Policies." It says, "Some people with autism are sensitive to touch and texture. Covering the nose and mouth with fabric can cause sensory overload, feelings of panic, and extreme anxiety." It recommends that they should not wear a mask. Link:

https://adasoutheast.org/disability-issues/ada-and-face-mask-policies/#:~:text=The%20ADA%20does%20not%20have,governments%20or%20private%20business%20owners.

10)     Plaintiff, Aaron Abadi, while he does not have autism, he does have sensory processing disorder, which is the actual disorder that an autistic child would have, if sensitive to touch to a point of possibly causing sensory overload.  It is listed on his medical records. Attached as Exhibit A & Exhibit B, are a doctor's letter, and a copy of the medical chart from plaintiff's doctors, and an affidavit by confirming this.

11)     Attached is a copy of an affidavit by Plaintiff's Neurologist submitted in another action in Florida, confirming that Plaintiff is disabled under the ADA guidelines (Exhibit C).

12)     Plaintiff states that he had this condition his entire life.  He could not wear glasses, sunglasses, baseball caps on his head and face, as it will cause a serious sensory overload.  He also has difficulties wearing neckties and starched shirts. Anything around the face or head is a serious problem.

13)     This is not simply a discomfort.  Our senses send messages to our brains, and when there's a dysfunction in those messages, the brain gets the wrong message.  When I try to wear a mask or any of those other items I mentioned, it starts off with extreme discomfort and pretty quickly turns into unbearable, where I will rip it off without any regard of the consequences.  It is also coupled with headaches and other irritation. I cannot wear a mask at all.

14)    As per ADA guidelines, this Petitioner should be exempt from wearing a mask. See the ADA and Face Mask Policies _ Southeast ADA Center, where it clearly defines the sensory disability, and states that such a person should be exempt from mask rules. In any case, sensory processing disorder, when activated, creating sensory overload, it limits almost all major life activities, as the Petitioner cannot function, and thus it clearly fits the criteria set by ADA.

15)    In clarifying the definition of disability, 28 CFR § 36.105 (1) says "Physical or mental impairment means: (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."

16)    Petitioner's disorder affects the body system related to the sense of touch, specifically, and is included in the above definition of disability. Touch is the ability to sense pressure, vibration, temperature, pain, and other tactile stimuli. These types of stimuli are detected by mechanoreceptors, thermoreceptors, and nociceptors all over the body, most noticeably in the skin. These receptors are especially concentrated on the tongue, lips, face, palms of the hands, and soles of the feet. The law recognizes that a disorder in the important sense of touch severely limits many major life activities.

17)    The Doctor's letter confirms that the Plaintiff already had Covid and was no longer contagious. The CDC states that Covid reinfection is rare (Exhibit D). This is not to say it cannot happen, but the public accommodation is responsible to apply logic and make an honest risk assessment. Under these circumstances, Plaintiff argues that without obvious symptoms, he cannot be considered a direct threat, which is defined as a significant risk, when it comes to

disability laws. It is certainly a good idea to increase precautions, but it doesn't create a direct threat, and therefore it doesn't allow discrimination.

18)     The Equal Employment Opportunity Commission ("EEOC") has a similar guidance to the effect that only those with Covid or its symptoms can be considered a direct threat (Exhibit E) . Link: https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act

19)     It states the following: "These facts manifestly support a finding that a significant risk of substantial harm would be posed by having someone with COVID-19, or symptoms of it, present in the workplace at the current time." Without even symptoms there's no justification to consider me a "direct threat" AKA a significant risk.

20)     Now, for arguments sake, if you were to say that anyone without a mask is a direct threat, then you would have to prove that everyone with a mask, including all the most common masks that are useless, are suddenly no longer a direct threat. Otherwise, that's discrimination.

21)     The medical community and including the CDC, the NIH, and the WHO, evolved in regards to their expectations of the value of a typical face mask in protecting people from Covid 19. Even to date, there is no clear peer-reviewed study that can confirm the importance and benefits of wearing masks as is being worn currently. The CDC themselves confirm that we do not have real evidence (Exhibit F). Most of us say, it probably cannot hurt, although some studies say that it can. Plaintiff is not looking to adjudicate that issue, if not requested to by the court, or the Defendants. Suffice it to say that the typical mask is questionable as to its protection.

22)     Defendant, Amtrak, discriminated against Plaintiff, conspired to discriminate, and did not attempt to stop the discrimination.

23)     There were many employees, staff, executives, and even attorneys that were part of this conspiracy and/or participated in the discrimination. During discovery, we will ask for that information, and add those defendants to this action, if the Court will permit it.

24)     On January 22, 2021, at 4:45 PM, I was on the train (Acela 2170 in car 6 seat 17F) without a mask leaving Philadelphia station, heading to New York City. I have a medical disability that causes me not to wear a mask. Specifically sensory integration disorder.

25)     The person checking the tickets on the train asked me to wear a mask. I explained about my disability. He said then you cannot travel on Amtrak. I explained to him that federal guidelines and the States of NJ, PA, and NY all exempt me from wearing a mask, and that the ADA laws require him to accommodate me.

26)     He yelled at me and said "no, you cannot be on the train at all, and we are not bound by any of those laws." Thankfully, the train already started moving, so he couldn't throw me off. He kept this going for about 7 or 8 minutes and finally left me alone.

27)     People without disabilities were not treated this way.

28)     I contacted Amtrak on 08/20/2021.  this time they were a bit more cooperative. They stated that an exemption was possible, but not guaranteed, however there were restrictions in place that would made it very difficult for me to travel by train.

29)     A normal person can just go to an Amtrak train, hop on and get to their destination.  I would be required to write letters and give advance notice, and yet not be sure if I will be allowed to ride anyway.  If that isn't discrimination, I don't know what is.

30)      They should just accept the letter that I sent them and put a note on my account that I've been approved for maskless traveling.  Simple, just like Air France did.  These complex approval processes are deliberately put in place to deter and make it almost impossible to travel.

31)      The email from them (Exhibit G) came seven days after I filed the request.  It was understood that they would not give a blanket exemption, but every trip I would have to give them 72-hours notice and hope they said it was okay.

32)      I already sent them my doctor's letter and explained that I was disabled, yet they chose to create a complicated bureaucratic system, to keep me away from their trains.

33)      Non-disabled people just walk on a train at a moment's notice, but I have to jump through hoops in order to travel, due to my disability. I would have to wait days and pray that they allow me to travel.

34)      Obviously, they were deeming me a health risk without really evaluating me individually, just assuming that any applicants for mask exemptions are a direct threat to others. This is in contradiction to all the disability laws.

35)      To me this felt like gaslighting, as it is very clear that I am not a "Direct Risk," as I already had Covid, and the CDC says, "Covid reinfections are rare."  Additionally, the EEOC clarified that you need symptoms to be considered a risk. I didn't have symptoms when I made the request, and I would never go if I had symptoms.

36)      Additionally, ADA's meaning of direct threat would not apply to masks for Covid, as the protection of a typical mask from Covid is negligible, as proven in multiple studies, and without any evidence of me having Covid, they cannot label me as a Direct Threat.  ADA law requires an individualized assessment, which was not done.

37)     I should be entitled to live and move around like other people.  State & Federal Law requires them to exempt me from a mask and accommodate me. I was discriminated against due to my disability, and my entire family had to suffer.

38)     Although, Amtrak did seem to have a way for someone like me to travel, it was so complicated, almost impossible to work out, and so much more complicated than any non-disabled person.

39)     Most people like to travel on short notice, I know that I do.  With this complex exemption approval process, that would be impossible.  That is discrimination.  Why shouldn't I be treated like everyone else?! Why shouldn't I have the same rights?!

40)     Non-disabled people are not required to wait up to 72 hours before a booked ride to be approved to travel. There is no reason that they cannot review my case once in the beginning, learn that I have a permanent disability that causes me to never be able to wear a mask, and give me a permanent exemption, without playing all these games.

## INJURIES & AFFECTS

41)     The losses are financial, as I was denied basic services and privileges that all people have access to. I was already denied the right to travel on airlines and buses, so my only remaining option was by train. I had business opportunities that required me to travel and I wanted to travel for pleasure too. I was denied my right to travel.

42)     Business funding and other business opportunities were ruined due to Plaintiff's inability to travel.

43)     Additionally, the emotional toll and anxiety caused from being discriminated against is significant, and probably much more than the financial.

44)      Plaintiff was deprived by Defendant of his civil liberties, as a person with disabilities.

45)      On average, I go to ten states or more each year.  I travel a lot.  I was trying to raise money for a business project and was not able to get to California to meet prospective funders.

46)      I have been unemployed. I spent seven years and a lot of money on this business project.  If I were able to complete it, I would not be in this serious financial distress, which is painful, and causes serious emotional anguish and anxiety.

47)      Disabled people have a right to not be discriminated against.  Human beings have a right to be treated like human beings.  My rights were stripped from me.

## CAUSE OF ACTION

### COUNT ONE

48)      **ADA Discrimination on the basis of disability in a public accommodation.**
For the first count, Plaintiff alleges that defendants violated the Americans with Disabilities Act of 1990 ("ADA") on multiple occasions, specifically ADA Title III 28 CFR Part 36 - Nondiscrimination on the basis of disability by public accommodations and in commercial facilities.

49)      Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

50)      Plaintiff alleges that Defendants discriminated against him due to his disability and did not allow him equal access to the public accommodations described herein.

51)    In defining public accommodation, it clarifies the following: 28 CFR Part 36 §
36.104 "Place of public accommodation means …(7) A terminal, depot, or other station used for
specified public transportation."

52)    It continues to state: "Specified public transportation means transportation by bus,
rail, or any other conveyance (other than by aircraft) that provides the general public with
general or special service (including charter service) on a regular and continuing basis."

53)    The ADA states § 36.201(a) "Prohibition of discrimination. No individual shall be
discriminated against on the basis of disability in the full and equal enjoyment of the goods,
services, facilities, privileges, advantages, or accommodations of any place of public
accommodation by any private entity who owns, leases (or leases to), or operates a place of
public accommodation." See § 36.202 for a breakdown of the various types of illegal
discrimination, including: (a) denial of participation, (b) participation in unequal benefit, & (c)
separate benefit. The above factual allegations show multiple violations of these laws.

54)    Amtrak has a stated policy that all people entering their locations and/or riding on
their trains must wear masks.  This was repeated to the defendant. The employees seem to
believe that, Amtrak is a private company and they can create their own policy, whether or not it
complies with the law.

55)    ADA law requires the Defendants to modify their policy to accommodate a
person with a disability when they cannot wear a mask.  42 U.S.C. § 12182(a).[3] "The ADA
defines discrimination to include: [A] failure to make reasonable modifications in policies,
practices, or procedures, when such modifications are necessary to afford such goods, services,
facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations...."

56)    In clarifying the definition of disability, 28 CFR § 36.105 (1) says "Physical or mental impairment means: (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."

57)    Plaintiff's disorder affects the body system related to the sense of touch, specifically, and is included in the above definition of disability. Touch is the ability to sense pressure, vibration, temperature, pain, and other tactile stimuli. These types of stimuli are detected by mechanoreceptors, thermoreceptors, and nociceptors all over the body, most noticeably in the skin. These receptors are especially concentrated on the tongue, lips, face, palms of the hands, and soles of the feet.

58)    While the Defendant seems to suggest that the reason of their discrimination is for safety, ADA Law § 36.301 (b) says, "A public accommodation may impose legitimate safety requirements that are necessary for safe operation. Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." This requirement of actual risk is a very similar concept to the next paragraph, discussing direct threat.

59)    A public accommodation can deny access when there's a "direct threat." § 36.208 (b) "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain:

The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." Defendant seemed to have believed that Plaintiff coming in without a mask will pose a direct threat.

60)     If the CDC believed that anyone without a mask was a "direct threat," they would have been careless and negligent in their duties to allow for such exemptions at all.  Even for eating and drinking, how can you kill people just because you want to eat and drink?! Obviously, the idea was to reduce the overall spread, and not to suggest that all people are a direct threat without a mask.

61)     It is understood from the previous paragraphs that a person, even without already having Covid, is not considered a direct threat or an actual risk, without any symptoms, and without any indication that they may have any disease, as the rate of transmission and the statistics showing the risk factor are relatively low, when avoiding people who are carrying the disease, maintaining a reasonable distance in general, and utilizing proper cleanliness.  Certainly, though, a person who already had Covid, as is the case with this Plaintiff, should not be considered a direct threat or an actual risk without clear symptoms, as the CDC confirms, "Covid reinfection is rare." (as shown above)

62)     The idea that masks are actually effective in reducing a direct threat, is debatable, at best. If an entity discriminates against a person with natural immunity without a mask, treating him different and/or less than another person without natural immunity, but with a mask, that is discrimination.  If the fellow with the mask is not considered a direct threat, then the other fellow **with natural immunity without a mask is less of a threat.**

63)    The Supreme Court confirms that fear of a contagious disease in itself is not sufficient grounds to permit discrimination. "Allowing discrimination based on the contagious effects of a physical impairment would be inconsistent with the basic purpose of § 504, which is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others." School Bd. of Nassau Cty. v. Arline, 480 US 273 - Supreme Court 1987. See the entire decision.

64)    This Court may grant relief: As in § 36.504 (a) "Authority of court. In a civil action under § 36.503, the court - (1) May grant any equitable relief that such court considers to be appropriate, including, to the extent required by the Act or this part - (i) Granting temporary, preliminary, or permanent relief; (ii) Providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method…"

65)    Many think that since ADA violations provide injunctions and/or declaratory relief, since the mask mandates are now over, this claim is moot.

66)    That is not true. There is clearly a continued call for the reinstatement of the mask mandates.

67)    As recently as November 21, 2022, there is a press release from the Department of Health and Human Services ("HHS"), stating that a report was "commissioned by HHS and produced by Coforma, an independent third-party design and research agency. It provides recommendations on how to deliver high-quality care, and relevant and intentional resources and supports to individuals and families impacted by Long COVID." (Link: https://www.hhs.gov/about/news/2022/11/21/hhs-releases-long-covid-report-providing-insights-and-opportunities-

support.html#:~:text=A%20new%20report%20released%20by,is%20a%20set%20of%20conditi
ons. )

68)     In that report on pages 41 & 63, the HHS Health+ ("Health plus") program

recommends new guidelines to "mandate policies and protocols regarding masking and social

distancing in public spaces," in order to protect from LONG COVID.  In other words, the federal

government is coming back with recommendations to mandate masks.  (Link:

https://www.hhs.gov/sites/default/files/healthplus-long-covid-report.pdf)

69)     While we all hoped the issue would be moot, it clearly is not moot, as it is back on

the table pretty quickly.

70)     Plaintiff submits to this Court that although the mask mandate is currently not in

effect, the federal government is actively pursuing its reinstatement, and it is very likely that it

will be reinstated by many States, municipalities, and even private businesses, therefore nothing

in this Complaint should be deemed as moot.

71)     Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT TWO

72)     **42 U.S. Code § 1985 (3) Conspiracy to interfere with civil rights:** The

Defendant conspired with many other companies and people to interfere with Plaintiff's civil

rights, by conspiring to deprive him of his right to utilize their public accommodations, and by

conspiring to deny him his rights in all the counts listed herein.

73)     Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for

this count and for all counts listed thereafter.

74)     42 U.S. Code § 1985 (3)- Conspiracy to interfere with civil rights. "…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

75)     Defendant conspired to deny the Plaintiff access to the Amtrak facilities and trains, and conspired to discriminate against him due to his medical disability.

76)     Plaintiff alleges that the defendant together with similar companies, trains, and airlines, as an industry conspired with each other, with the federal agencies involved, and with the people therein to discriminate against them due to their disabilities.

77)     Defendant may want to respond that there is no clear evidence of them all conspiring, for example a taped conversation where they are heard discussing between each other and agreeing to discriminate against the disabled as a group.  That is not required by the statute.

78)     Take for example, if you see five Ku Klux Klan guys walking down a street with clubs in their hand, and they find and beat up a black person, do you need to hear them on tape conspiring to get together and beat the person in order to claim conspiracy?! Of course not.

79)     The same goes for the transportation industry and the federal agencies that seem to have instigated the discrimination.  They are almost all as an industry and its federal agencies colluding and conspiring to discriminate against plaintiff and those similarly situated. They are acting the same as those Ku Klux Klan bullies.

80)     See Thomas v. Roach, 165 F. 3d 137 - Court of Appeals, 2nd Circuit 1999, it says "A conspiracy "need not be shown by proof of an explicit agreement but can be established by

showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'"

LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir.1995) (quoting United States v. Rubin,

844 F.2d 979, 984 (2d Cir.1988))."

81)    The class-based animus alleged is about an unprecedented, difficult to believe

animus that is obvious from this complaint and dozens of other complaints from this Plaintiff and

others similarly situated, and from news stories.  The complaints show a disturbing pattern of

discrimination towards people with a specific disability that does not allow them to wear a mask.

82)    While it is not the responsibility of the Plaintiffs to determine the source or cause

of this animus, it is possible that the political divide in the country between the pro-maskers and

the anti-maskers caused them to have animus towards the mask disabled, as they could not or

refused to differentiate between them and anti-maskers without mask-disabilities.

83)    We can certainly get to the bottom of the animus during discovery and

depositions, but the fact that there is a specific animus to people like us with a mask related

disability is absolute.  The animus is so thick it can be sliced with a knife. We have felt it every

time we enter a store with a mask policy. Medical centers, airlines, courts, and others, even now

give us a dirty look, even when they finally let us in. The animus is most definitely there and

Plaintiff will show that before and/or during trial.

84)    Plaintiff's injuries are a direct result of the actions by the Defendant.

## COUNT THREE

85)    **42 USC § 1986, Neglecting to Prevent Interference with Civil Rights.**

Defendant was aware of the conspiracy to interfere with the civil rights of the disabled by most

of their industry, including themselves, banning Plaintiff and similarly disabled from accessing

transportation and visiting related facilities and riding their trains, but did nothing to stop it. They possess the power to stop the conspiracy and speak up, but have not taken any action to do so.

86)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

87)    "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case..." 42 USC § 1986.

88)    Section 1986 creates a remedy against persons whose acquiescence make conspiracies to interfere with civil rights possible.

89)    Defendant is liable to Plaintiff for neglecting to prevent interference with his civil rights.

90)    Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT FOUR

91)    **Discrimination under a program receiving federal funds. Defendants are in violation of The Rehabilitation Act ("RA") of 1973 § 504, 29 U.S.C. § 794 (a),** which says, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

92)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

93)    Amtrak has been a recipient of significant federal funds as is well known, and as is available on the Department of Transportation website online (Exhibit H).

94)    The discrimination issues are similar to those presented in the first count. "Although there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." Henrietta D. v. Bloomberg, 331 F. 3d 261 - Court of Appeals, 2nd Circuit 2003.

95)    In 29 U.S.C. § 794 it states, "These laws apply to the following entities: (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship—(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole."

96)    Plaintiff alleges that Defendant, Amtrak, discriminated against him due to his disability and did not allow him equal access to the public accommodations and as described herein.

97)    The remedies available to the court for both the ADA violations and the Rehabilitation Act violations are up to the court's discretion to award "such relief as may be appropriate," (42 U. S. C. § 2000c–7) as described in Barnes v. Gorman, 536 US 181 - Supreme Court 2002, "Section 202 of the ADA prohibits discrimination against the disabled by public

entities; § 504 of the Rehabilitation Act 185*185 prohibits discrimination against the disabled by recipients of federal funding, including private organizations, 29 U. S. C. § 794(b)(3).

98)     Both provisions are enforceable through private causes of action. Section 203 of the ADA declares that the "remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides" for violations of § 202. 42 U. S. C. § 12133. Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available" for violations of § 504, as added, 92 Stat. 2983, 29 U. S. C. § 794a(a)(2). Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U. S. C. § 2000d et seq., which prohibits racial discrimination in federally funded programs and activities."

99)     Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT FIVE

100)     **Violation of New York State Human Rights Law ("HRL").** Defendant violated Plaintiff's civil rights by denying him access to enter its facilities and/or ride its trains, because of his disability.

101)     HRL § 291 (2) "The opportunity to obtain education, the use of places of public accommodation and the ownership, use and occupancy of housing accommodations and commercial space without discrimination because of age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability,

as specified in section two hundred ninety-six of this article, is hereby recognized as and declared to be a civil right."

102)    § 292 (9) "The term "place of public accommodation, resort or amusement" shall include… all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof…"

103)    § 296 (2) (a) "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…"

104)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

105)    Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT SIX

106)    **New Jersey Human Rights violation; Defendant withheld from and denied to this Plaintiff the facilities and privileges of traveling on Amtrak trains, and** utilizing the lounges and facilities, including those located in New Jersey. Plaintiff travels extremely often to a from New Jersey, as most of his large family resides there.

107)    Law Against Discrimination "LAD" defines public accommodations as follows: "A place of public accommodation shall include…any public conveyance operated on land or water or in the air or any stations and terminals thereof;" NJSA 10:5-5. (L)

108)    N.J.S.A. 10:5-12 It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: f. (1) For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof…"

109)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

110)    Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT SEVEN

111)    **New Jersey Human Rights LAD; Defendant sent an email notice to Plaintiff conveying that he will not be permitted to travel on Amtrak** (Exhibit G), in violation of the New Jersey LAD.

112)    N.J.S.A. 10:5-12 "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: …directly or indirectly to publish, circulate, issue, display, post or mail any written or printed communication, notice, or advertisement to the effect that any of the accommodations, advantages, facilities, or privileges of any such place will be refused, withheld from, or denied to any person, on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, pregnancy or breastfeeding, sex, gender identity or expression, affectional or sexual orientation, disability…"

113)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

114)    Plaintiff's injuries are a direct result of the actions by the Defendant.

## COUNT EIGHT

115)   **NYC Civil Rights Laws:** Unlawful discriminatory practice by denying Plaintiff

equal access to all facilities and to ride from New York City, where Plaintiff resides to various

locations in various states, where he normally travels.

116)   The New York City Administrative Code Title 8: Civil Rights § 8-107 (4) "It

shall be an unlawful discriminatory practice for any person who is the owner, franchisor,

franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or

provider of public accommodation... Because of any person's actual or perceived race, creed,

color, national origin, age, gender, disability, marital status, partnership status, sexual

orientation, uniformed service or immigration or citizenship status, directly or indirectly: (a) To

refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and

conditions, of any of the accommodations, advantages, services, facilities or privileges of the

place or provider of public accommodation."

117)   Public Accommodation is defined as follows: "Place or provider of public

accommodation. The term "place or provider of public accommodation" includes providers,

whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or

privileges of any kind, and places, whether licensed or unlicensed, where goods, services,

facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or

otherwise made available." § 8-102.

118)   Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for

this count and for all counts listed thereafter.

119)   Plaintiff's injuries are a direct result of the actions by the Defendant.

## COUNT NINE

120)    **NYC Civil Rights Laws: Unlawful discriminatory practice by Defendant Amtrak, as they sent an email notice to Plaintiff conveying that he will not be permitted to travel on Amtrak** (Exhibit G), in violation of the NYC Civil Rights Laws.  Plaintiff was notified that he would not be able travel on any Amtrak train or visit any of their facilities in the same manner that non-disabled can travel, and with 72 hours notice, and many more discriminatory requirements and demands, in violation of New York City law.

121)    The New York City Administrative Code Title 8: Civil Rights § 8-107 (4) "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation… 2. Directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that:  (a) Full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability."

122)    Public Accommodation is defined as above in the previous count.

123)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

124)    Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT TEN

125)    **NYC Civil Rights violation: Defendant failed to engage in a cooperative**

**dialogue within a reasonable timeframe,** rather denied Plaintiff flat out, without offering any options or further discussions.

126)    The New York City Administrative Code Title 8: Civil Rights § 8-107 - 28 (b) Public accommodations. It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation related to disability as provided in subdivision 15 of this section.

127)    Defendant violated this New York City Law.

128)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed thereafter.

129)    Plaintiff's injuries are a direct result of the actions by the Defendant.

## COUNT ELEVEN

130)    **THE PENNSYLVANIA HUMAN RELATIONS ACT; ACT OF 1955**, P.L. 744, NO. 222, AS AMENDED JUNE 25, 1997 BY ACT 34 OF 1997, 43 P.S. §§ 951-963;

131)    SECTION 5. Unlawful Discriminatory Practices. "It shall be an unlawful discriminatory practice... (i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation, resort or amusement to: (1) Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability, ... either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement."

132)    It continues to include the following as discrimination, (It shall be an unlawful discriminatory practice… (i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation to…) "(3) Exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations or other opportunities to a person because of the handicap or disability of an individual with whom the person is known to have a relationship or association."

133)    In Section 2 (L) it describes the definition of public accommodations and includes the following, "all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof,

134)    Amtrak and many of its employees were directly discriminating against this Plaintiff.

135)    Their direct actions caused the injury described herein.


## COUNT TWELVE

136)    **THE PENNSYLVANIA HUMAN RELATIONS ACT; ACT OF 1955**, P.L. 744, NO. 222, AS AMENDED JUNE 25, 1997 BY ACT 34 OF 1997, 43 P.S. §§ 951-963;

137)    Defendant is in violation for discriminatory practice by Defendant Amtrak, as they sent an email notice to Plaintiff conveying that he will not be permitted to travel on Amtrak (Exhibit G), in violation of these Laws.  Plaintiff was notified that he would not be able travel on any Amtrak train or visit any of their facilities in the same manner that non-disabled can travel, and without 72-hours notice, and many more discriminatory requirements and demands, in violation of Pennsylvania State law.

138)    SECTION 5. Unlawful Discriminatory Practices. "It shall be an unlawful discriminatory practice… (i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation, resort or amusement to… (2) Publish, circulate, issue, display, post or mail, either directly or indirectly, any written or printed communication, notice or advertisement to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, color, religious creed, sex, ancestry, national origin or handicap or disability…"

139)    In Section 2 (L) it describes the definition of public accommodations and includes the following, "all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof…"

140)    Amtrak and many of its employees were directly discriminating against this Plaintiff. Their direct actions caused the injury described herein.

## COUNT THIRTEEN

**141)    DC HUMAN RIGHTS LAW: Denying a disabled person equal benefits.**

142)    In the Code of the District of Columbia, Chapter 14. Human Rights it states, Part D. Public Accommodations. § 2–1402.31. Prohibitions.(a) General. — "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, disability…"

143)    "(1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations…"

144)    It includes the following public accommodations, "all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof…"

145)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed herein.

146)    Plaintiff's injuries are a direct result of the actions by the Defendant.


## COUNT FOURTEEN

147)    **DC HUMAN RIGHTS LAW: Sending email to Plaintiff** which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation will not be permitted in the same way as non-disabled people enjoy it, due to Plaintiff's disability.

148)    Defendant is in violation for discriminatory practice by Defendant Amtrak, as they sent an email notice to Plaintiff conveying that he will not be permitted to travel on Amtrak (Exhibit G), in violation of these Laws.  Plaintiff was notified that he would not be able travel on any Amtrak train or visit any of their facilities in the same manner that non-disabled can travel, and without 72-hours notice, and many more discriminatory requirements and demands, in violation of DC HUMAN RIGHTS law.

149)    In the Code of the District of Columbia, Chapter 14. Human Rights it states, Part D. Public Accommodations. § 2–1402.31. Prohibitions.(a) General. — "It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory

reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, disability…"

150)    "(2) To print, circulate, post, or mail, or otherwise cause, directly or indirectly, to be published a statement, advertisement, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation will be unlawfully refused, withheld from or denied an individual; or that an individual's patronage of, or presence at, a place of public accommodation is objectional, unwelcome, unacceptable, or undesirable."

151)    It includes the following public accommodations, "all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof…"

152)    Plaintiff incorporates by reference the facts alleged in the earlier paragraphs for this count and for all counts listed herein.

153)    Plaintiff's injuries are a direct result of the actions by the Defendant.


**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, Aaron Abadi, respectfully requests judgment in his favor, as follows:

A.      Compensatory damages for at least $800,000 of which the exact amount will be determined through discovery, at or before trial, and/or through the jury decision;

B.      Punitive damages as determined by the Court for the multiple counts where it is applicable;

C.    Declaratory relief, to clarify and declare that Plaintiff is exempt from wearing a mask and should be allowed to go anywhere and everywhere without harassment or discrimination; and that disability laws did not go into abeyance until Covid disappears.

D.    Injunctive relief requiring Amtrak to notify every employee, and staff member that disability laws are applicable to all, and that they are all required to become familiar with those laws.

E.    Injunctive relief to require Defendants to allow Plaintiff to enter all its facilities, and ride any of its trains without any different prerequisites that non-disabled are not required to provide or do.

F.    Such other and further relief as the Court deems just and appropriate.


I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Respectfully submitted December 02, 2022,

AARON ABADI, Plaintiff
82 Nassau Street Apt 140
New York, NY 10038
516-639-4100
Email:  aa@neg.com