## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**AARON ABADI**,

        Plaintiff,

        v.

**NATIONAL RAILROAD PASSENGER
CORPORATION**,

        Defendant.

Case No. 1:22-cv-03684 (TNM)

---

### MEMORANDUM ORDER

Plaintiff Aaron Abadi has a medical condition that prevents him from wearing a face mask.  In January 2021, he boarded an Amtrak train maskless but was told by an employee that if he did not wear one, he would be removed.  Abadi now sues the National Railroad Passenger Corporation, or Amtrak, alleging violations of various state and federal laws.  He filed an amended complaint in May 2023.  Soon after, Amtrak filed this motion to compel arbitration, which is now ripe for resolution.  Upon review of the parties' briefing and exhibits, the Court concludes that Amtrak has shown that Abadi, through his agent, agreed to arbitrate his claims. But Abadi presents genuine issues of material fact as to whether the Agreement is unconscionable.  The Court therefore holds Amtrak's motion to compel arbitration in abeyance pending a trial or evidentiary hearing on unconscionability.

### I.

Abadi, a resident of New York City, travels regularly between there and Philadelphia, sometimes by train.  Am. Compl. ¶¶ 1, 2, 65, ECF No. 15.  On January 22, 2021, Abadi boarded an Acela train heading from Philadelphia to New York City.  *Id*. ¶ 43.  He was not wearing a mask.  *Id*.  When an Amtrak employee asked him to mask up, Abadi explained he had a

disability that prevented him from wearing one.  *Id*. ¶ 44.  The employee told Abadi he "cannot

travel on Amtrak" and "yelled" at Abadi.  *Id*. ¶¶ 44–55.  After "7 or 8 minutes . . . [the

employee] finally left [him] alone."  *Id*. ¶ 45.

A couple years earlier, Amtrak amended its Terms and Conditions to include an

Arbitration Agreement.  *Id*. ¶ 16.  The Arbitration Agreement stipulates that the parties agree to

arbitrate "all claims Amtrak may have against [the passenger] and claims [the passenger] may

have against Amtrak."  Decl. of Sunil D. Tewari (Tewari Decl.), Attach. 1 at 50–51, ECF No.

18-2.  This includes claims of "emotional distress" and "any claims for discrimination and failure

to accommodate."  *Id*., Attach. 1 at 51.  The Agreement "applies to all claims, disputes, or

controversies, past, present, or future, that otherwise would be resolved in a court of law."  *Id*.,

Attach. 1 at 50.

Before buying a ticket on Amtrak's website or mobile app, a customer must affirmatively

accept Amtrak's Terms and Conditions.  *Id*. ¶¶ 5–6.  The Terms and Conditions page contains a

hyperlink to the Arbitration Agreement.  *Id*. ¶ 6.  Clicking on the link takes the customer directly

to the text of the Arbitration Agreement itself.  Def.'s Renewed Mot. to Compel (Mot. to

Compel) at 4, ECF No. 18-1.  Customers cannot complete the ticket purchase until they click a

box affirming that they "have read and agree to the terms and conditions, including the binding

arbitration agreement."  Tewari Decl. ¶ 6.

Abadi says he did not himself buy the ticket he used to travel from Philadelphia to New

York on January 22.  Rather, he gave his credit card to a friend who bought the ticket for him.

Pl.'s Opp'n at 2, ECF No. 21.  According to Abadi, his friend "was not aware of any

[Arbitration] Agreement[], and just purchased the ticket online."  *Id*.  And he alleges that "[i]f

there [were] an agreement that she clicked on, she had no idea and was not authorized in any

way by the Plaintiff to bind him into any agreements." *Id*.  Abadi also denies having seen the Arbitration Agreement himself.  *See id*.

But according to a review of Amtrak's records, "Aaron Abadi affirmatively clicked the box stating that he had read and agreed to Amtrak's Terms and Conditions, version 2.8.10, on January 22, 2021 at 8:31:40 p.m., while purchasing a ticket to travel on train 2170 from Philadelphia to New York City on January 22, 2021."  Tewari Decl. ¶ 7.

Abadi filed an initial complaint alleging several disability discrimination claims based on the mask incident.  *See* Compl., ECF No. 1.  Amtrak's counsel contacted Abadi by email, asking if he would consent to arbitration.  Mot. to Compel at 6–7; *see id*., Ex. B, ECF No. 18-3.  Abadi refused.  *Id*., Ex. B.  Abadi then filed an Amended Complaint.  Am. Compl.  And Amtrak moved to compel Arbitration.  Mot. to Compel at 1–2.

## II.

"A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4. Because arbitration is a matter of contract, "courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citation omitted).  The Federal Arbitration Act (FAA) establishes "a liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepción*, 563 U.S. 333, 339 (2011) (cleaned up).  Under the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

"The appropriate standard of review for a motion to compel arbitration is the summary judgment standard under Federal Rule of Civil Procedure 56(c)."  *Fox v. Comput. World Servs.*

*Corp.*, 920 F. Supp. 2d 90, 96 (D.D.C. 2013). An order compelling arbitration "is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (cleaned up). In other words, the moving party must "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Ruiz v. Millennium Square Residential Ass'n*, 466 F. Supp. 3d 162, 168 (D.D.C. 2020) (cleaned up). In response, the party opposing arbitration must "raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Fox*, 920 F. Supp. 2d at 96 (cleaned up).

If the Court concludes that a "a genuine dispute of material fact exists as to 'the making of the arbitration agreement,' [it] should proceed summarily to trial solely on the issue of arbitrability." *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020) (quoting 9 U.S.C. § 4).

## III.

Abadi challenges the validity of the Arbitration Agreement on several grounds. First, he contends that he never entered an agreement to arbitrate with Amtrak because his friend bought his ticket for him and, in any event, that friend never agreed to arbitration. Second, he argues that the Agreement is unconstitutional because it violates the Petition Clause and deprives him of Article III adjudication. Last, he argues that the Arbitration Agreement is unconscionable. The Court addresses each issue in turn.

### A.

Before referring any dispute to arbitration, the Court's first task is to "determine[] whether a valid arbitration agreement exists." *Henry Schein, Inc.*, 139 S. Ct. at 530. "Because arbitration is a contractual matter, [the Court] must first determine whether the parties have

agreed to arbitrate by looking to state contract law." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021). Under District of Columbia law, a contract is enforceable where there is "(1) an agreement to all material terms, and (2) intention of the parties to be bound." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008) (cleaned up).[1]

Amtrak argues that its records prove Abadi affirmatively agreed to its Terms and Conditions, including the Arbitration Agreement. *See* Tewari Decl. ¶ 7. But Abadi denies having seen or read the Arbitration Agreement because his friend bought the ticket for him, and the friend neither knew of the Arbitration Agreement nor had the authority to bind him to it. Pl.'s Opp'n at 2, 5. Had he known about the Arbitration Agreement, Abadi would not have traveled or would have bought a ticket at the train station. *See id.* at 3.

But Abadi's argument is derailed by basic agency law principles. Even if Abadi himself did not buy the ticket, the Tewari Declaration shows that the person who did agreed to Amtrak's Terms and Conditions, including the Arbitration Agreement. Tewari Decl. ¶ 7. And by giving his credit card to his friend to buy an Amtrak ticket, Abadi authorized his friend to contract with Amtrak on his behalf. In other words, Abadi's friend had "apparent authority" to bind Abadi to the Arbitration Agreement. *See Drazin v. Jack Pry, Inc.*, 154 A.2d 553, 554 (D.C. 1959) ("The apparent authority of an agent to perform an act may . . . arise by placing him in a position which causes a third person to reasonably believe that the principal had consented to the exercise of authority the agent purports to hold.").

Several courts have ratified this understanding of agency relationships in identical contexts. For example, in *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 167 (D. Mass. 2007), the

---

[1] Amtrak claims that D.C. law applies to this action, and Abadi does not appear to object. Mot. to Compel at 15; *see also Fox*, 920 F. Supp. 2d at 97 (finding that the parties "accepted the application of D.C. law by asserting arguments based on D.C. law in their briefs").

court held that the plaintiff was bound by Expedia's terms even though her friend had booked her travel for her.  This is because "the person booking the tickets is acting as an agent on behalf of the other members of the traveling party."  *Id*. at 175.  Implicit within this relationship is "the power to bind the principal as to matters within the scope of the relationship, including the acceptance of the terms of a disclaimer."  *Id*.  Similarly, in *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268 (E.D.N.Y. 2019), the court enforced an arbitration clause against the plaintiff even though her friend had agreed to it when she created an Amazon account on the plaintiff's behalf.  Because the plaintiff authorized her friend to create the account, "there can be no dispute that [the friend] . . .  establish[ed] a principal-agent relationship."  *Id*. at 269.

Abadi also argues that his friend never saw nor read the Arbitration Agreement when she bought his ticket.  Pl.'s Opp'n at 2.  But Amtrak shows that the friend who bought the train ticket on Abadi's behalf agreed to Amtrak's Terms and Conditions by clicking the appropriate box. Tewari Decl. ¶ 7; *see Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 11 (D.D.C. 2021) (finding that Lyft's method of "presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service . . . constitutes a valid means of offer and acceptance").  Abadi is bound by those terms whether or not his friend read them.  *Accord Gambo v. Lyft, Inc*., 642 F. Supp. 3d 46, 55 (D.D.C. 2022) (compelling arbitration where plaintiff clicked "I agree" and noting "one who signs a contract is bound by it, regardless whether he reads it" (cleaned up)).

Last, Abadi's arguments that Amtrak's website is glitchy and that the declarant's evidence that he signed the agreement is hearsay do not give rise to a genuine dispute of material fact.  The Court is satisfied that Amtrak's declarant is a custodian of the records pertaining to passenger sales, including the purchase records for Abadi's January 2021 trip to New York City. Tewari Decl. ¶ 7.  Therefore, the evidence would be admissible as an exception to the hearsay

rule.  *See* Fed. R. Evid. 803(6); *Boca Investerings P'ship v. United States*, 128 F. Supp. 2d 16, 18 (D.D.C. 2000).  Meanwhile, Abadi's screenshots of webpages claiming Amtrak's website is glitchy and prone to malfunction are themselves hearsay not subject to any exemption.  *See* Fed. R. Evid. 801; *see also Humane Soc. v. Animal & Plant Health Insp'n Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (refusing to consider second-hand, unsubstantiated allegations).

## B.

Now consider Abadi's constitutional challenges.  Abadi argues that the Arbitration Agreement is unlawful and unconstitutional because it violates the Petition Clause.  Pl.'s Opp'n at 9.  According to Abadi, because Amtrak is a government entity, he has a right to petition the courts for redress for any claims against it.  *Id.* at 10.  He also contends that the Arbitration Agreement threatens the "institutional integrity of the judicial branch" by channeling constitutional and statutory claims into private arbitration.  *Id.*

These arguments are specious, at best.  Though Amtrak is authorized by statute, it is still "a private, for-profit corporation . . . not a department, agency, or instrumentality of the United States Government."  *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 856 (D.C. Cir. 2021) (cleaned up).  But even when a federal actor compels arbitration, courts have held that individuals can waive their right to an Article III forum.  *See Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 368 (7th Cir. 1999) ("The right to an Article III forum is waivable . . . ."); *CFTC v. Schor*, 478 U.S. 833, 848 (1986) ("Article III's guarantee of an impartial and independent federal adjudication is subject to waiver."); *Syngenta Crop Prot., Inc. v. Drexel Chem. Co.*, 655 F. Supp. 2d 54, 61 (D.D.C. 2009) ("The Constitution is not offended when parties are willing to arbitrate . . . .").  So when Abadi consented to the Arbitration Agreement, he waived his right to adjudication by an Article III court.

## C.

Last, turn to unconscionability.  In the District of Columbia, a contract is unconscionable if there "an absence of meaningful choice on the part of one of the parties" and the contractual terms are "unreasonably favorable to the other party."  *Simon v. Smith*, 273 A.3d 321, 331 (D.C. 2022).  These two elements are known as procedural and substantive unconscionability.  *Id.*  In all but the most "egregious situation[s]," a party seeking to avoid the contract must prove both elements.  *Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339, 342 (D.C. 2023).  Evaluating unconscionability "calls for a strongly fact-dependent inquiry."  *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121 (D.C. 2010).  And when the party opposing a motion to compel arbitration raises "a triable issue of fact as to the unconscionability of the arbitration agreement" the Court must hold further proceedings on the issue.  *Andrew v. Am. Imp. Ctr.*, 110 A.3d 626, 636 (D.C. 2015).

Abadi argues that the Arbitration Agreement is procedurally unconscionable because it is a "contract of adhesion" and that he lacked meaningful choice because Amtrack has "almost a complete monopoly on passenger rail service in the United States."  Pl.'s Opp'n at 8.  Amtrak contends that Abadi had "meaningful choice" whether to accept its Terms and Conditions in the first instance.  *See* Def.'s Reply Mem. at 8–9, ECF No. 22.  But Abadi raises a genuine issue of material fact as to whether he had meaningful choice in transportation options that did not require him to sign an arbitration agreement.  *See Keeton*, 987 A.2d at 1122 (D.C. 2010) (remanding to trial court for hearing to determine whether plaintiff had access to other car dealerships that did not impose similar arbitration clauses).

As for substantive unconscionability, Abadi argues that the Arbitration Agreement binds him for a "lifetime," "deprives him of his rights of due process" and "forces indigent pro se

litigants" to pay fees they "would not have to pay in court."  Pl.'s Opp'n at 6–7.  The Court is unpersuaded by the first two arguments.  Though the contract may bind Abadi for a "lifetime" by requiring that he arbitrate all "past, present, or future" claims, this requirement applies with equal force to Amtrak.  Tewari Decl., Attach. 1 at 50–51; *see Doucette*, 288 A.3d at 343 (finding arbitration agreement not unconscionable when "both parties are equally obligated to arbitrate their claims").  And Abadi's vague due process arguments appear to attach arbitration agreements generally.  But the mere requirement to arbitrate is hardly a due process violation. After all, "District of Columbia law permits arbitration agreements and requires their enforcement when valid."  *Doucette*, 288 A.3d at 345.

Yet Abadi does raise a genuine issue of material fact as to whether it is substantively unconscionable to require him, a pro se litigant proceeding in forma pauperis, to pay a $225 arbitration filing fee.  Generally, filing fees in arbitration agreements are not unconscionable so long as they are not "prohibitively expensive."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000).  Based on Abadi's financial affidavit, Mot. for Leave to Proceed IFP, ECF No. 2, the Court finds that there is a genuine issue of material fact as to whether the $225 arbitration fee would be cost prohibitive.

In sum, the Court concludes that Abadi raises two genuine disputes of material fact on whether the Arbitration Agreement is unconscionable.  First, whether he had meaningful choice in transportation options that did not require him to sign arbitration agreements.  Second, whether the arbitration filing fee is too expensive.  Having found "that a genuine dispute of material fact exists," the Court must "hold the motion to compel arbitration in abeyance pending a trial on the issue of arbitrability."  *Jin*, 966 F.3d at 828.

**IV.**

For all these reasons, it is hereby

**ORDERED** that Defendant's Motion to Compel Arbitration is HELD IN ABEYANCE; it is

**FURTHER ORDERED** that the parties must appear for a scheduling conference on April 26, 2024, regarding a trial or evidentiary hearing on unconscionability.  It is

**FURTHER ORDERED** that this case is STAYED pending the trial or evidentiary hearing.

**SO ORDERED.**

_____
Dated: March 29, 2024                                   TREVOR N. McFADDEN, U.S.D.J.